UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

JOACHIM PETROLINO,

        Plaintiff,

     v.

COUNTY OF SPOKANE, et al.,

        Defendants.

No. CV-07-228-FVS

ORDER GRANTING AND
DENYING DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT

**THIS MATTER** came before the Court on August 3, 2009, based upon the defendants' motion for summary judgment. They were represented by Heather C. Yakely. The plaintiff was represented by Gary R. Stenzel.

**BACKGROUND**

Joachim Petrolino is a citizen of Germany. He speaks some English. On or about May 1, 2004, Mr. Petrolino was arrested by City of Spokane police officers based upon his wife's allegation that he assaulted her. An officer drove him to the Spokane County Jail. He alleges that, upon arrival, he repeatedly asked to speak to a German consular official. He submits that correctional officers ignored or rebuffed his requests. During the booking process, Spokane County Deputy Sheriff Steven Skinner gave Mr. Petrolino a pen and asked him to sign a form. Mr. Petrolino refused. Deputy Skinner thought Mr. Petrolino was being uncooperative, so he decided to place him in a holding cell. According to Deputy Skinner, Mr. Petrolino began

Order - 1

walking away.  Deputy Skinner caught up with Mr. Petrolino and grabbed one of his arms.  Deputy Skinner told him to drop the pen.  Mr. Petrolino says he did not understand Deputy Skinner's command. According to Mr. Petrolino, his failure to comply was a function of his limited English.  He denies intentionally disobeying Deputy Skinner or threatening him with the pen.  Deputy Skinner forced Mr. Petrolino to a sitting position, and then rolled him face down on the floor.  In the process, he administered a knee strike to Mr. Petrolino's abdomen.  Other corrections officers came to assist. Among those present were Deputy Toby Shell, Deputy Daniel Leonetti, and Sergeant Stephan Long.  Deputy Leonetti administered at least one knee strike to Mr. Petrolino.  Several corrections officers piled on Mr. Petrolino while he was lying on the floor.  Their combined weight made it difficult for him to breath.  Eventually, they handcuffed him. Mr. Petrolino says he experienced great pain and passed out.  He awoke in a cell.  Later, he learned one of his ribs was broken; an injury he attributes to the actions of the corrections officers.

On June 18, 2007, Mr. Petrolino filed an action in Spokane County Superior Court against Spokane County, the Spokane County Sheriff, and numerous "John Doe" and "Jane Doe" defendants.  He seeks damages under 42 U.S.C. § 1983 and the law of the State of Washington.  The defendants removed the matter to federal court.  28 U.S.C. §§ 1446, 1441(a).  The Court has original jurisdiction over Mr. Petrolino's federal claims.  28 U.S.C. §§ 1331 and 1343(3).  The Court may exercise supplemental jurisdiction over his state-law claims.  28 U.S.C. § 1367.  The defendants move for summary judgment with respect

Order - 2

to his federal claims.    Fed.R.Civ.P. 56(b).

**GENEVA CONVENTION**

Mr. Petrolino's complaint alleges that the defendants violated the Geneva Convention.  However, his complaint does not identify the acts giving rise to the alleged violation.  And since filing the complaint, he has never sought leave to amend it; either to identify the acts giving rise to the treaty violation or, for that matter, to allege a violation of a different treaty.  The defendants assume he is alleging that the corrections officers ignored or rebuffed his requests to speak with a representative of the German government.  If so, his reliance upon the Geneva Convention is misplaced; it does not secure the right he seeks to vindicate.  Mr. Petrolino conceded as much in his response to the defendants' motion for summary judgment. He explained that he wants to allege the corrections officers violated the Vienna Convention on Consular Relations.  He argues that he may recover damages for the violation under 42 U.S.C. § 1983.

Section 1983 states, in pertinent part, "Every person who, under color of any statute, . . . custom, or usage, of any State . . . subjects . . . any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights . . . secured by the Constitution and laws, shall be liable to the party injured in an action at law[.]"  The Ninth Circuit has assumed, without deciding, that the Vienna Convention qualifies as a "law" for purposes of § 1983.  *Cornejo v. County of San Diego*, 504 F.3d 853, 858 n.8 (9th Cir.2007).  Nevertheless, Mr. Petrolino's Vienna Convention claim faces two obstacles, one of which is insurmountable.  To begin

Order - 3

with, his allegation that the corrections officers violated the Vienna Convention is a new claim; one not alleged in his complaint.  He may not amend his complaint by filing a memorandum.  *Daury v. Smith*, 842 F.2d 9, 15 (1st Cir.1988).   Furthermore, the Vienna Convention does not create a private right of action.  *Cornejo*, 504 F.3d at 863-64.  Thus, even assuming the corrections officers violated the Vienna Convention by ignoring or rebuffing Mr. Petrolino's requests to speak with a consular official, he may not seek relief for the violation under § 1983.  His treaty-violation claim must be dismissed.

**FIFTH AMENDMENT**

Mr. Petrolino alleges Deputy Skinner violated the Fifth Amendment by demanding that he sign booking forms without first providing the warnings specified in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).  In order to establish a Fifth Amendment violation, Mr. Petrolino must satisfy two requirements.  First, he must identify a non-Mirandized statement that he made to Deputy Skinner.  Second, Mr. Petrolino must show that a prosecutor used the statement against him in a criminal case.  *Aguilera v. Baca*, 510 F.3d 1161, 1173 (9th Cir.2007), *cert. denied*, --- U.S. ----, 129 S.Ct. 487, 172 L.Ed.2d 355 (2008).  Mr. Petrolino has not identified an actionable statement.  Consequently, Deputy Skinner is entitled to summary judgment on his Fifth Amendment claim.

**EXCESSIVE FORCE CLAIM AGAINST CORRECTIONS OFFICERS**

As many as five corrections officers were involved in the conflict with Mr. Petrolino.  He claims that four of them subjected him to excessive force.  He alleges it was unreasonable for them

Order - 4

either to administer knee strikes or to pile on him while he was lying
on the floor.  The corrections officers seek qualified immunity.  As a
general rule, analyzing a request for qualified immunity is a two-step
process.  *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156,
150 L.Ed.2d 272 (2001).[1]  The "threshold question" is this:  "Taken in
the light most favorable to the party asserting the injury, do the
facts alleged show the officer's conduct violated a constitutional
right?"  *Id.*

Pursuant to the Due Process Clause of the Fourteenth Amendment, a
corrections officer may not subject a pretrial detainee to force that
amounts to punishment.  *Graham v. Connor*, 490 U.S. 386, 395 n.10, 109
S.Ct. 1865, 1871 n.10, 104 L.Ed.2d 443 (1989).  Although it is the
Fourteenth Amendment, not the Fourth, that protects a pretrial
detainee from excessive force by corrections officers, the Ninth
Circuit has ruled that a pretrial detainee's excessive claim against a
corrections officer is governed by the Fourth Amendment standard.
*Pierce v. Multnomah County*, 76 F.3d 1032, 1043 (9th Cir.1996), *cert.
denied*, 519 U.S. 1006, 117 S.Ct. 506, 136 L.Ed.2d 397 (1996).  Under
the Fourth Amendment, the force used by a corrections officer must be
objectively reasonable given the totality of the circumstances.
*Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1185, 1186 (9th
Cir.2002), *cert. denied*, 537 U.S. 1106, 123 S.Ct. 872, 154 L.Ed.2d 775
(2003).  In deciding whether force was objectively reasonable, a court

[1]Rigid adherence to *Saucier*'s two-step process is no longer
required.  *Pearson v. Callahan*, 555 U.S. ----, ----, 129 S.Ct.
808, 815, 172 L.Ed.2d 565 (2009).

Order - 5

must compare a corrections officer's need to use force with the type and amount of force he used. *Lolli v. County of Orange*, 351 F.3d 410, 415 (9th Cir.2003).

The corrections officers used several techniques to control Mr. Petrolino. One technique was to pile on him while he was lying on the floor. Mr. Petrolino alleges that this technique was objectively unreasonable. However, in order to avoid summary judgment, Mr. Petrolino must identify evidence in the record which would permit a rational jury to identify the officers who allegedly piled on. The Court has carefully reviewed "Plaintiff's Statement of Material Facts." Nowhere does it cite evidence which would identify a rational jury to identify the perpetrators. Perhaps the evidence is somewhere in the record, but the Court declines to comb the record for evidence that should be cited in the Statement of Material Facts. *See Bias v. Moynihan*, 508 F.3d 1212, 1219 (9th Cir.2007) ("[a] district court does not have a duty to search for evidence that would create a factual dispute"). Absent evidence identifying the specific corrections officers who piled on, a jury would be unable to return a verdict against any particular officer. Consequently, Mr. Petrolino's piling-on allegation fails for want of evidence identifying the perpetrators. Each individual corrections officer is entitled to summary judgment on Mr. Petrolino's allegation that the officer employed objectively reasonable force by piling on.

Another technique the corrections officers used to control Mr. Petrolino was to administer knee strikes. Deputy Skinner kneed him in the abdomen. Deputy Leonetti may have kneed him in the ribs.

Order - 6

Although Deputies Skinner and Leonetti recognize that a knee strike involves substantial force, they argue that knee strikes were appropriate given Mr. Petrolino's refusal to surrender the pen that he possessed. According to them, a pen is a potential weapon. They claim that Mr. Petrolino created a threat to their safety by refusing to surrender the pen.

Mr. Petrolino testified during his deposition that he lost consciousness when the corrections officers piled on him. Seizing upon that testimony, the corrections officers claim he cannot dispute their version of the incident because he was unconscious. The corrections officers are incorrect. While it is true that Mr. Petrolino said he lost consciousness, a fair reading of his testimony indicates that he said he lost consciousness after he had been aggressively forced to the floor and kneed. (Deposition of Joachim Petrolino dated October 1, 2008, at 200, 202-03.) A rational jury could find he was conscious during the parts of the incident that are material to his excessive force claim.

Mr. Petrolino's account of the incident is much different than the officers' account. To begin with, he denies that he did anything that a reasonable corrections officer could have construed as a threat. For example, he denies either waving the pen over his head or swinging his arms in a menacing manner. Furthermore, he denies that he intentionally disobeyed the officers' requests. He says that if he failed to comply, it was only because his English is limited and he did not understand the corrections officers were demanding.

The mere fact that Mr. Petrolino's account of the incident

Order - 7

differs sharply from the officers' account is not enough to create a material issue.  The dispute is material only if it will affect the outcome of a claim.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).  Whether the dispute will affect the outcome depends upon the governing law.  *Id.* In that regard, the Supreme Court has long recognized that a law enforcement officer may use some force to restrain a suspect while frisking him for weapons.  *Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968).  Nevertheless, the force employed by the officer must be objectively reasonable under the circumstances. *Graham*, 490 U.S. 396-97, 109 S.Ct. at 1871-72.  At the risk of oversimplifying, it is fair to say that a law enforcement officer may not employ severe force when the suspect does not pose a significant danger to him and he could have used less abusive means to restrain the suspect.  *See, e.g., Winterrowd v. Nelson*, 480 F.3d 1181, 1186 (9th Cir.2007); *Davis v. City of Las Vegas*, 478 F.3d 1048, 1056 (9th Cir.2007).

As explained above, the parties disagree with respect to whether Mr. Petrolino posed a significant danger to the officers' safety and whether they had less abusive means to restrain him.  If the officers' account is correct, Mr. Petrolino resisted their commands and threatened them with a potential weapon.  Should the jury credit the officers' account, the jury could find that the force which they employed, although severe, was justified under the circumstances.  By contrast, if Mr. Petrolino's account is correct, the officers subjected him to severe force even though he neither intentionally

resisted their commands nor threatened them.  Should the jury credit Mr. Petrolino's account, the jury could find that their actions were objectively unreasonable.  Since the outcome of Mr. Petrolino's excessive force claim will depend, in large part, upon which account of the incident the jury credits, the conflict between the two accounts creates a material issue of fact.

However, not every material factual dispute creates a jury issue. The dispute must be "genuine"; that is to say, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.  Typically, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513. Since Mr. Petrolino's version of the incident is not "blatantly contradicted by the record," *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007), the Court must view his version in the light most favorable to him.  *See Saucier*, 533 U.S. at 201, 121 S.Ct. at 2156.  If a jury credits his version, then it could find that the corrections officers subjected him to severe force despite the fact he did not fully understand their commands, did not intentionally disobey them, and did not threaten them with a pen. Were the jury to make such findings, it could conclude that the amount of force employed by the corrections officers significantly exceeded the amount of force which they actually needed to restrain him.  Thus, a genuine issue of material fact exists.

The existence of a potential constitutional violation is not the

Order - 9

end of the qualified-immunity inquiry.  Even assuming a jury issue

exists with respect to whether Deputies Skinner and Leonetti violated

the Constitution, they are entitled to qualified immunity unless it

was clearly established on May 1, 2004, that corrections officers may

not use knee strikes to control a detainee who is neither threatening

them, nor actively resisting them, nor intentionally disobeying their

commands.  *Cf. Saucier*, 533 U.S. at 202, 121 S.Ct. at 2156 ("if a

violation could be made out on a favorable view of the parties'

submissions, the next, sequential step is to ask whether the right was

clearly established"); *Moran v. Washington*, 147 F.3d 839, 844 (9th

Cir.1998) ("plaintiff bears the burden of proving that the rights she

claims were 'clearly established' at the time of the alleged

violation" (citing *Davis v. Scherer*, 468 U.S. 183, 197, 104 S.Ct.

3012, 3020-21 82 L.Ed.2d 139 (1984))).  Neither *Winterrowd v. Nelson*,

*supra*, nor *Davis v. City of Las Vegas*, *supra*, was decided before May

1, 2004, so neither case could not have provided fair notice to the

corrections officers.  *See Brosseau v. Haugen*, 543 U.S. 194, 200 n.4,

125 S.Ct. 596, 600 n.4, 160 L.Ed.2d 583 (2004) (*per curiam*).  However,

Mr. Petrolino has cited another case which appears to be germane.  It

is *Deorle v. Rutherford*, 272 F.3d 1272 (9th Cir.2001), *cert. denied*,

536 U.S. 958, 122 S.Ct. 2660, 153 L.Ed.2d 835 (2002).  In *Deorle*, a

police officer shot an emotionally disturbed man in the face with a

"lead-filled 'beanbag round'" as the man walked toward the officer.

272 F.3d at 1275.  There was a sharp factual dispute as to what

occurred prior to the shooting.  Mr. Deorle presented evidence

indicating the officer shot him despite the fact "he was unarmed, had

Order - 10

not attacked or even touched anyone, had generally obeyed the instructions given him by various police officers, and had not committed any serious offense." *Id.* On those facts, the Ninth Circuit held that a rational jury could find that the officer violated Mr. Deorle's Fourth Amendment right to be free from objectively unreasonable force. *Id.* at 1285. *Deorle* is not the only potentially relevant case. In *Drummond v. City of Anaheim*, 343 F.3d 1052, 1054 (9th Cir.2003), *cert denied*, 542 U.S. 918, 124 S.Ct. 2871, 159 L.Ed.2d 775 (2004), police officers arrested a mentally ill man in order to prevent him from harming himself. The man presented evidence indicating that the officers applied substantial force to his chest while handcuffing him. *Id.* He told them he could not breath. *Id.* Despite his pleas for air, and despite the fact he was not resisting, the officers continued to apply substantial force to his chest; depriving him of oxygen. *Id.* at 1055. As a result, he allegedly suffered a cardiopulmonary arrest. *Id.* Were a rational jury to credit the man's evidence, said the Ninth Circuit, it could find that the severe force employed by the officers clearly exceeded the minimal force that was required to subdue the man. *Id.* at 1059.

In view of the Ninth Circuit's holdings in *Deorle* and *Drummond*, an objective corrections officer arguably should have realized on May 1, 2004, that he could not use knee strikes to control a detainee who was neither threatening him, nor actively resisting him, nor intentionally disobeying his commands. Deputies Skinner and Leonetti have not attempted to distinguish either *Deorle* or *Drummond*, nor have they attempted to demonstrate that their use of knee strikes was

lawful under then-existing caselaw even if one credits Mr. Petrolino's version of the incident.  For example, they have not cited a case in which a court has ruled that a corrections officer acted reasonably by engaging in conduct similar to that described by Mr. Petrolino. Instead, they submit that they are entitled to qualified immunity either because Mr. Petrolino does not dispute their version of the incident, or because their conduct was not "egregious," or because they were following valid use-of-force guidelines.  The preceding arguments are not a substitute for the type of analysis the Supreme Court requires under the "clearly established" prong of *Saucier*'s two-prong test.  *See, e.g., Brosseau*, 543 U.S. at 199-201, 125 S.Ct. at 599-600.  Given Deputy Skinner's and Deputy Leonetti's failure to engage in the type of analysis required by the Supreme Court, this Court is constrained to rule that they were on notice that corrections officers may not use knee strikes to control a detainee who is neither threatening them, nor actively resisting them, nor intentionally disobeying their commands.  Thus, they are not entitled to qualified immunity with respect to Mr. Petrolino's allegation that they acted in an objectively unreasonable manner by administering knee strikes.[2]

---

[2]The corrections officers allege Mr. Petrolino refused to drop the pen he was holding.  He denies their allegation.  If the officers' allegation is correct, he may have engaged in a form of passive resistance.  In *Forrester v. City of San Diego*, 25 F.3d 804, 807-08 (9th Cir.1994), the Ninth Circuit upheld a verdict in favor of law enforcement officers who used pain compliance techniques in order to overcome passive resistance.  However, the circuit court did not discuss the propriety of using knee strikes as a pain compliance technique.

Order - 12

**FAILURE TO INTERCEDE**

Mr. Petrolino alleges that certain unnamed corrections officers should have interceded on his behalf and prevented their fellow officers from using objectively unreasonable force to subdue him. This allegation is based upon a well established principle of law. A law enforcement officer has a duty to intercede on behalf of a person who is being subjected to objectively unreasonable force by a fellow officer when the observing officer has a realistic opportunity to prevent his fellow officer from violating the Constitution. However, there are at least two limitations upon an observing officer's duty to intercede. First, he must have reason to know that his fellow officer is subjecting the victim to objectively unreasonable force. *Montano v. City of Chicago*, 535 F.3d 558, 569 (7th Cir.2008). Second, he must have a realistic opportunity to intervene and prevent a constitutional violation from taking place. *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir.2000).

Although it is clear that Mr. Petrolino is relying upon a well established principle of law, it is equally clear that he cannot prevail given the record as it now stands. For starters, he has not named the officers who should have interceded on his behalf. As a result, a rational jury could not return a verdict against any particular officer. Moreover, he has not identified any evidence that would permit a rational jury to find that a corrections officer was in a position to intercede on his behalf in time to prevent objectively unreasonable force. For example, Deputy Skinner allegedly administered a single knee strike. Which other officer reasonably

Order - 13

could have interceded?  Mr. Petrolino does not say.  Nor does he say which officer reasonably could have prevented Deputy Leonetti from administering allegedly unconstitutional knee strikes.  In the absence of evidence that specific, named corrections officers were in a position to anticipate and prevent objectively unreasonable force, there is no material issue of fact for a jury to resolve, much less a genuine issue of material fact.  It follows that the corrections officers are entitled to summary judgment on Mr. Petrolino's allegation that they violated the Constitution by failing to intercede on his behalf to prevent him from being subjected to excessive force.

**ASSOCIATION WITH DAUGHTER**

Mr. Petrolino was married on May 1, 2004.  Thereafter, his wife filed for dissolution of their marriage under the law of the State of Washington.  In addition, she sought to limit his right to see their daughter.  Mr. Petrolino alleges that he was unable to respond properly to his former wife's dissolution action because of the injuries he suffered at the hands of the corrections officers.  As a result of his inability to respond, says Mr. Petrolino, he was denied access to his daughter for a period of time.  He alleges that the corrections officers are responsible for his temporary loss of access. He is asserting a separate § 1983 claim against them based upon their alleged interference with his right to associate with his daughter.

The Ninth Circuit has repeatedly held that a parent has a constitutionally protected interest -- typically referred to as a "liberty interest" -- in the companionship of his minor child.  *See, e.g., Kelson v. City of Springfield*, 767 F.2d 651, 655 (9th Cir.1985).

Given the limitations imposed by the Fourteenth Amendment, a State may not deprive a parent of a liberty interest without due process of law. *Id.*  Mr. Petrolino claims the corrections violated the Fourteenth Amendment by temporarily depriving him of the companionship of his daughter.

Mr. Petrolino's claim is unusual in at least one respect.  In the typical excessive force case, the parent alleges that a state actor killed, or is responsible for the death of, his child.  *See, e.g., Porter v. Osborn*, 546 F.3d 1131, 1132-33 (9th Cir.2008).  Mr. Petrolino does not allege that the corrections officers harmed his daughter.  To the contrary, he alleges that the corrections officers harmed him, and that by doing so, they deprived him of his liberty interest in the companionship of his daughter.  It is unclear whether a parent may bring a Fourteenth Amendment loss-of-association claim based upon the allegation that he, as opposed to his child, has been injured by a law enforcement officer.

Assuming for purposes of argument that Mr. Petrolino has stated a claim for which relief may be granted, the next issue is whether he can establish all of the elements of a § 1983 claim.  Among other things, he must prove both causation-in-fact and proximate cause.  *See Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir.1996); *Arnold v. International Business Machines*, 637 F.2d 1350, 1355 (9th Cir.1981).  Perhaps a rational jury could find that the officers' actions were the but-for cause of Mr. Petrolino's alleged loss of association.  Even so, a rational jury would be unable to find that the officers reasonably should have foreseen the sequence of events

Order - 15

that led to his alleged deprivation of contact with his daughter; namely, that after his arrest, his wife would seek dissolution of their marriage; that she would seek to limit his access to their daughter; and that he would be unable to respond his wife's legal maneuverings because of the injuries which the officers allegedly inflicted while he was incarcerated.  Simply stated, the connection between Mr. Petrolino's temporary loss of association with his daughter and the officers' allegedly unconstitutional conduct is too attenuated to make his loss a foreseeable consequence of their conduct.  Thus, their conduct was not a proximate cause of Mr. Petrolino's alleged loss of association.  They may not be held liable under § 1983.  *Cf. Palsgraf v. Long Island R. Co.*, 248 N.Y. 339, 352, 163 N.E. 99, 103 (1928) (Andrews, J., dissenting) ("What we . . . mean by the word 'proximate' is, that because of convenience, of public policy, of a rough sense of justice, the law arbitrarily declines to trace a series of events beyond a certain point.").

**COUNTY LIABILITY**

Mr. Petrolino seeks damages from Spokane County under § 1983 on the ground the County violated his Fourteenth Amendment right to be free from objectively unreasonable force.  In order to recover, Mr. Petrolino must prove four elements:  (1) he was deprived of a constitutional right; (2) the County had a policy; (3) the policy amounted to a deliberate indifference to his constitutional right; and (4) the policy was the moving force behind the constitutional violation.  *Mabe v. San Bernardino County, Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1110-11 (9th Cir.2001).  It is useful to begin with the

second element, *viz.*, the existence of a policy.  Mr. Petrolino
alleges that Deputy Skinner acted pursuant to a "longstanding practice
or custom," *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir.1992)
(internal punctuation and citations omitted), *cert. denied*, 510 U.S.
932, 114 S.Ct. 345, 126 L.Ed.2d 310 (1993), when Skinner asked him to
sign the booking form.  According to Mr. Petrolino, this longstanding
practice or custom represented the standard operating procedure within
the jail, and, thus, constituted County policy.  *See id.*  Not only
that, but he alleges the policy was unconstitutional.  In his opinion,
he had a right to refrain from signing the booking form that Deputy
Skinner was completing.

The Court will assume, for purposes of argument, that Deputy
Skinner's request for a signature reflected County policy and that Mr.
Petrolino had a right to refuse to sign the form.[3]  Nevertheless, it
is clear the policy neither directed nor authorized correctional
officers to use force to compel signatures.  Therein lies an obstacle
to Mr. Petrolino's attempt to recover from the County under § 1983.
He must prove the Sheriff's form-signing policy was the moving force
behind the correctional officers' allegedly unconstitutional use
force.  A policy constitutes a moving force only if it is "closely
related to the ultimate injury." *Gibson*, 290 F.3d at 1196 (internal
punctuation and citations omitted).  No such relationship exists in

---

[3]The source of the right is unclear.  At oral argument, Mr.
Petrolino suggested that it might be secured by either the First
Amendment or the Due Process Clause of the Fourteenth Amendment.
Despite making that assertion, he did not cite (and independent
research has failed to uncover) a case recognizing such a right.

Order - 17

this case.  A rational jury would be unable to find that the Sheriff reasonably should have foreseen that, by requiring his corrections officers to ask detainees to sign booking forms, his corrections officers would subject detainees to objectively unreasonable force. To the contrary, a rational jury would be compelled to find that Mr. Petrolino's alleged injury is too remote from the Sheriff's alleged policy for the policy to constitute a moving force behind the injury. Thus, neither the Sheriff nor Spokane County may be held liable under § 1983 on the theory that the signing policy injured Mr. Petrolino. Spokane County and the Sheriff are entitled to summary judgment on this issue.[4]

**CONCLUSION**

In sum, the Court grants and denies the defendants' motion for summary judgment:

The Court dismisses Mr. Petrolino's treaty-violation claim because, even if he could amend his complaint at this late date, the Vienna Convention does not create a private right of action.  *Cornejo*,

---

[4]Mr. Petrolino's complaint alleges the Sheriff negligently hired, trained and supervised the correctional officers.  It appears this allegation is based upon state law.  In any event, he has presented no evidence from which a rational jury could find Spokane County liable under § 1983.  *Cf. Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 411-15, 117 S.Ct. 1382, 1392-93, 137 L.Ed.2d 626 (1997) (inadequate screening of job applicant); *City of Canton v. Harris*, 489 U.S. 378, 390-92, 109 S.Ct. 1197, 1205-06, 103 L.Ed.2d 412 (1989) (failure to train).  If he is seeking relief under § 1983 based upon the Sheriff's hiring, training or supervision, his § 1983 claim fails.

Order - 18

504 F.3d at 863-64.

The Court grants summary judgment with respect to his Fifth Amendment claim because he has failed to identify a non-Mirandized statement which was used against him in a criminal case. *Aguilera*, 510 F.3d at 1173.

The Court grants summary judgment with respect to his allegation that the corrections officers used objectively unreasonable force by piling on. His Statement of Material Facts does not cite evidence in the record that would enable a rational jury to identify the perpetrators.

The Court denies Deputy Skinner's and Deputy Leonetti's request for qualified immunity with respect to Mr. Petrolino's allegation that they used objectively unreasonable force by administering knee strikes. Given the state of excessive-force jurisprudence on May 1, 2004, an objective corrections officer arguably should have realized he may not use knee strikes to control a detainee who is neither threatening him, nor actively resisting him, nor intentionally disobeying his commands. *See, e.g., Drummond*, 343 F.3d at 1059-60; *Deorle*, 272 F.3d at 1285-86. Deputies Skinner and Leonetti have not attempted to distinguish either *Deorle* or *Drummond*, nor have they attempted to demonstrate their use of knee strikes was lawful under then-existing caselaw even assuming Mr. Petrolino's version of the incident is correct.

The Court grants summary judgment with respect to Mr. Petrolino's failure-to-intercede claim. His Statement of Material Facts does not cite evidence that would permit a rational jury to identify specific

officers who were in a position to anticipate and prevent the unconstitutional use of force.

The Court grants summary judgment with respect to Mr. Petrolino's loss-of-association claim.  Any connection between the corrections officers' allegedly unconstitutional use of force, on the one hand, and his temporary loss of association with his daughter, on the other, is too attenuated to make his loss a foreseeable consequence of their conduct.

The Court grants summary judgment with respect to Mr. Petrolino's allegation that Spokane County violated his right to be free from objectively unreasonable force.  Even assuming Deputy Skinner was acting according to County policy when he asked Mr. Petrolino to sign the booking form, the policy was not a moving force in the corrections officers' allegedly unconstitutional use of force.

**IT IS HEREBY ORDERED:**

The "Defendants' Motion for Summary Judgment" (**Ct. Rec. 68**) is granted in part and denied in part.

**IT IS SO ORDERED.**  The District Court Executive is hereby directed to enter this order and furnish copies to counsel.

**DATED** this ___14th___ day of August, 2009.

                              ___s/Fred Van Sickle___
                                 Fred Van Sickle
                      Senior United States District Judge

Order - 20